Case No. 13, Benchmark Case No. 4, Performance Contracting Inc v. Dynasteel Corporation et al. Moral Argument not to exceed 15 minutes per side. Matthew T. James for the examination. Good morning, Your Honors. May it please the Court, Matthew T. James appearing on behalf of the Plaintiff Appellant, Performance Contracting. With me at the table is Rod Eisenhower, General Counsel for Performance Contracting. I'm reserving three minutes for rebuttal argument. We're here on the appeal of the District Court's dismissal on summary judgment of performance contracting's claim against the defendants for violation of the Michigan Builders Trust Fund Act. The central issue on appeal is whether the Trust Fund Act applies to this case. We have a foreign contractor, Dynasteel, in this case, with a foreign subcontractor, Performance Contracting. But the circumstances here, we argue, are such that the Act should apply to the defendants. And that plaintiff, Performance Contracting, is a proper beneficiary under the Act and can therefore bring a civil claim as the statute permits and the Michigan case law interpreting that statute allows. The circumstances here are that the contractor and statutory trustee under the Act, that's Dynasteel, had a construction contract with a Michigan owner, Your Consumer's Energy, to provide work on a project located in Michigan and the work that Performance Contracting provided to Dynasteel, there's no dispute, was incorporated into the Michigan project. This project was located north of Bay City, the D.E. Karn J.C. Weadock Generating Complex in Hampton Township, Michigan. The construction contract between Consumers Energy and Dynasteel expressly states that it is a Michigan contract to be governed by Michigan law. And Dynasteel was paid over $13 million on this project by consumers. All of those funds originated in Michigan and were paid by wire transfer to Dynasteel. That's also an undisputed fact. As a practical matter, I was wondering about why it's so important to have it under this statute because doesn't Dynasteel admit that they owe your client money? They claim they don't have it. Correct. Are they insolvent or is there some kind of a trust fund that you can grab this money out of or something? I mean, if they don't have the money, how are you going to get it even if you get it under this statute? Under the statute, there is personal liability against the officers of the corporation that are charged, the defendants in this case, Jim Russell and Ronald Russell. So that's the importance of the claim. Trying to go outside the corporate body. Outside the corporate box. Correct. And a claim against individuals under the Trust Fund Act sounds in fraud and therefore is not dischargeable in bankruptcy. So there's a couple reasons why that claim is important and why we're here today. I think this case is interesting for a lot of reasons, not the least of which is we're now in a global economy. And people in Michigan order lots of things that are fabricated in both other states and arguably other countries. Correct? Correct. So you're arguing that the Builders Trust Fund Act applies extraterritorially, number one. Correct? No. We're arguing that the Trust Fund Act applies to this case involving a Michigan contract with a Michigan owner on a Michigan project to a company, Dynasteel, that contracted with the Michigan owner and received funds from the Michigan owner to provide work on a Michigan project. The relationship, we argue that... It has to apply extraterritorially when you're trying to apply it to a company that's located outside of Michigan and misapplied the funds outside of Michigan. I thought that was a softball for you. I misconstrued it then. Extraterritorially in terms of, like the AccuTech case deals with the extraterritorial application of the Act. And in that case, what I was focusing on was the location of the project, meaning extraterritorially. Let's start over. You say the Act applies extraterritorially outside of Michigan. Yes. Right? So it could apply anywhere in the world, technically. If you can... The money is sent to Japan to make some part that's going to go in this generating plant. It could arguably apply to that. If you can establish, yes, that the relationship between the owner, the person paying the funds and the trustee under the statute, the person receiving the funds, if the trustee has a sufficient connection with the state of Michigan... Okay. That's what I wanted to get to. So now we have to figure out whether in connection with typical long arm questions, there's sufficient contacts with the state of Michigan, right? Yes. Is there... So what are the contacts between the state of Michigan involving PCI and DynaSteel, other than the fact that the equipment was eventually going to end up in Michigan and be installed there by somebody else and that the money to pay for it was apparently sent by consumers to DynaSteel? I would submit that the relationship between DynaSteel and PCI is not relevant for purposes of establishing whether the Trust Fund Act applies to DynaSteel. It's relevant in terms of PCI then becomes a beneficiary under the statute of the trust funds paid by the owner to DynaSteel. And you would concede that because PCI really didn't have any connection with Michigan, right? Other than the fact that its work got incorporated into a Michigan project, that's correct. So you're focusing on DynaSteel? Correct. The DynaSteel consumer energy relationship, that's what the statutory language is directed at. I'm not sure that I understand why there's really any difference in DynaSteel versus PCI in connection with the context with the state of Michigan. Because both companies are located out of state, their headquarters are out of state, the work was performed out of state. But DynaSteel is the company that contracted with the Michigan owner for work on a Michigan project and received money from the Michigan owner to provide work that was incorporated into that project. Under the statute, if you read the language, the statute is directed at the conduct of the trustee. It's the conduct of the person receiving the funds from the owner that's regulated by the Act. And the clear language of the Act says, if you receive trust funds from the owner or funds on the owner on a building construction project, you have to use those to pay the laborers, subcontractors, and material men that you engage on that project. And if you don't or hold those funds in trust, that's a violation. And the violation, the People v. Miller case is very clear on this. It addresses a specific issue. It's not just that the Act is violated once the money isn't paid. The Act also goes to funds that not only are due, but that can become due. So under that language and under that holding, if you receive advance payment of funds for work provided by one of your subcontractors, like DynaSteel did here, it got paid nearly all of its money before performance contracting completed its work and was paid only $300,000 earmarked for this project. They had an obligation to keep those funds in trust. What's the effect of this choice of law provision that Tennessee law applies? Okay, the choice of law provision, we would argue, is not applicable for a couple of reasons. One, case law is clear that a claim under the Builder's Trust Fund Act does not sound in contract. The Deponio case is very clear on that. It dealt with the issue of what statute of limitations controls for a builder's trust fund question. One of the parties was trying to argue that it was the breach of contract statute of limitations. The court said, no, that's not right because a claim under the trust fund doesn't sound in contract. It has nothing to do with, it's independent of a breach of contract. It's a statutorily created claim with statutorily imposed duties that are separate and distinct from the party's contract. It's based on a contract though, isn't it? Well, it's based on contract in that... A contract to trigger this thing. There has to be a construction contract between the person making the payments, the owner, and the person receiving the payments, the trustee, which would be Dynasteel. That clearly was involved here and there's no dispute about that. Then there has to be another contract between Dynasteel and your client. There has to be a contract in that that has to give rise to the subcontractor relationship. But there is no requirement under the statute to plead and prove breach of contract and it's not an element of a claim under the MBTFA as the Deponio case lays out. But you have to have a contract. I mean, it has to be... You have to be owed money, that's correct. It has to be under a contract, correct. But that leads into the second point as to why the choice of law doesn't apply. The choice of law provision in the purchase order, if that's the controlling contract here, is very the contract and performance here under. We cited cases in our brief and our reply brief to show that the choice of law clauses that the defendants cite in the Bannock and Moses cases are much broader than what was involved here. This, again, this clause only dealt with the contract and performance here under. Well, we've already established that a claim under the MBTFA does not involve a contract. It doesn't... It's separate and distinct from the contract. The Deponio case is very clear on that. And then performance here under, well, the defendants would try to argue that nonpayment of these funds is performance here under. But again, the law is clear that an element... It's not a required element under the MBTFA to prove nonpayment. The claim under the MBTFA is that the trustee violated the statutorily imposed duties, which is you took payment trust funds and didn't keep them in trust for the benefit of the persons providing work on the project. It's not that you, at that point, failed to make the payment. It's that you took them and used them for purposes other than to first pay people that had work on the project. And this statute goes back to 1931. It was enacted after the Great Depression to prevent builders from using funds on one... Robbing Peter to pay Paul, in a sense. In this case, the owner is not affected by this, correct? In this case, the owner is not affected because there weren't any construction liens filed on the project. Yes, correct. Presumably, they got releases. Correct. Or the parties decided not to record liens on the project. Okay. But, yeah... It could be a situation where the owner is affected. Yes. And that's one of the stated purposes under the Act. The case law is very clear, is that one of the purposes is to protect owners from contractors that take their money and don't use it to pay bills on the job. And that concern exists no matter if you have foreign or in-state subcontractors and contractors. The statute does not make any distinction between in-state and out-of-state beneficiaries under the Act. The beneficiaries are defined as any person who is so defrauded. There's no distinction or statement in the Act that there has to be a jurisdictional nexus in order to claim the benefits of the statute. Once it's established that the trustee of the Act receives the funds and there's a sufficient connection that the trustee has with Michigan, and here again, Michigan project, Michigan owner, contract, that they sign saying Michigan law applies. They purposely avail themselves of doing business in Michigan. Okay. And if that choice of law provision had been more broadly stated, would you have a problem? I think they'd have a stronger argument, yes. If it's stated that the choice of law governed all of the rights and obligations that the parties have and not just this contract and performance you're under. I mean, the duties that are imposed by the statute aren't spelled out in the contract. I mean, it's not a case where they can say that this contract involves the same type of duties that the statute imposes. That's not, there's no overlap there at all. All right. Thank you. You'll have your rebuttal. Thank you. Good morning. Stuart Tager on behalf of the defendants here. The parties agreed in their purchase order contract that their relationship would be governed by Tennessee law. Judge Ludington, in his opinion, concluded that Michigan's- It doesn't say that, does it? It says that the parties agree that the contract and performance they're under will be governed by Michigan law. Well, that's okay. I mean, that doesn't say that only the law of Tennessee applies. It says the contract and your performance, meaning, you know, what are the duties owed? And that's not what's in dispute here. What's in dispute is that instead of holding that money in trust, it was commingled and spent. Right. The contract, the purchase order specifies the work to be done by PCI. That's not an issue. And it requires payment. If the purchase order doesn't require Dynasteel to make payment, then we're done because we have no obligation to pay these guys in the first place. The purchase order, the contract requires that they do a body of work and that we pay them for it. The Michigan Builders Trust Fund Act is a method for enforcing performance under the act, under the contract. So just like the Michigan Builder Construction Lien Act is a method for enforcing performance under the contract. So that if the, in this case, Dynasteel doesn't pay, the Builders Trust Fund Act would be available if we were talking about Michigan parties, it would be available to enforce performance. Are you saying that this provision would have prohibited them from filing a lien? No. I'm not suggesting that. Okay. Well, then why not? Why wouldn't it have? The law would allow them to file a lien, assuming that they, there are issues, I think, as to whether they're a contractor or a supplier, because the definitions of the lien act are sort of vague. But assuming that they would be entitled to file a lien if they were in Michigan, I would agree that they would be entitled to file a lien here. Well, if they're entitled to file a lien, then why aren't they entitled to pursue this separate remedy? I would say that the difference is that the Builders Trust Fund Act creates a trust on funds that are in the hands, in this case, of Dynasteel, in the hands of the contractor. And in this case, the contractor is not in Michigan. And so, what we're, what we're suggesting... Let me ask you a question. Let's say, somehow or other, the owner was left holding the bag here. Would you be making the same argument? If the owner were left holding the bag here, the owner would presumably have a claim over against Dynasteel. Under the trust fund? Under the contract between Dynasteel and the owner. Would they also have a claim under the trust fund act? I would say not. But I would say that that's a better case. I would say it's a closer case than this case. Because Dynasteel has a contract with the Michigan entity. I'm sorry. But the Michigan legislature intended that a Michigan owner would have a claim against any contractor, whether from Japan or Timbuktu, under that act, if they are supplying... If they are a general contractor in a Michigan project and not holding that money in trust? My answer to you would be that Dynasteel has a contract with the Michigan owner, which provides that Michigan law applies. So as between the owner and Dynasteel, it's a much better case for the application of the Michigan Builders Trust Fund Act. Dynasteel has a contract with PCI, which provides that Tennessee law applies. The whole relationship between Dynasteel and PCI exists outside of the state of Michigan. There's no tie. And the parties agreed. And I come back to that because I think it's critical that the parties agreed that Tennessee law will apply. Judge Ludington did the analysis on the conflict of laws and concluded that that provision is enforceable and that the parties ought to live with that provision that Tennessee law applies. Hence, the Michigan Builders Trust Fund Act should not apply to this situation based on the provision in the contract between the parties. Mr. Jaynes says this Deponio case shows that it's not a matter of a breach of a contract. It's based upon the trust that's dependent on the statute. I agree. It is not a breach of contract claim. It is a claim that is based, however, on the contract, as you said before. The contract establishes that there's an amount owed. If there's nothing owed, we have nothing to talk about here. So both the statute, the statute itself speaks about amounts due, quote, under the terms of the contract. The Deponio case, which he relies upon, talks about the very same thing. If I can get to my page here. Quoting from Deponio, the statute prohibits a contractor or subcontractor from appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid. I go back to where I started. It's not a breach of contract claim. The Michigan Builders Trust Fund Act is a device to enforce obligations arising under the contract. In this case, the obligations from Diner Steel to PCI. And let me, if I may, sort of... If it doesn't apply, what's the effect of this choice of law? I'm sorry, say again, please. If there's no application, what's the choice of law in Tennessee? What's the effect of that? Why do you even have it in the contract? Because it governs the relationship between the parties. The Tennessee law. I mean, there are laws in Tennessee on payment. They could have sued us in Tennessee. Are you saying that... Let's say it didn't have a choice of law provision. Okay. Then what? Then I think we're left with the Accutech analysis from Judge Edmunds. And I understand it's not binding on this court, but since 1931, this law has been around. To my knowledge, there are three cases that discuss the application of the Michigan Builders Trust Fund in these kinds of contexts. Accutech, the Cusino case, which is a bankruptcy case out of Ohio, and then the more recent Perini-Thompkins case from Judge Zatkoff. Those are the only cases there are, and the second two follow Judge Edmunds' analysis in Accutech. And that's what we'd be left with then. We'd make the analysis that she makes in Accutech, and what she says in Accutech, number one for our purposes, is that the location of the project is irrelevant. And second, she says the analysis ought to focus on what the act is aimed at solving. The act is aimed at solving payment problems. So where was the money allegedly mishandled? If the money was allegedly mishandled in Michigan as in Accutech, then she says the act will apply. If the money was allegedly mishandled in Tennessee, the act would not apply. But why could the party in Tennessee and the party in Michigan not choose to have the Michigan Act apply to that transaction if they wanted to? I think they could choose to, and then we'd have the question. If they can choose to, then why does not the choice of law provision in the contract between consumers and Dynasteel that says that Michigan law applies then impose the Builder's Trust Fund Act, even though all the things that you're pointing out under Accusteel and under the facts of this case are true? I have two answers. I wonder if the parties could agree, to follow your example, PCI and Dynasteel could have agreed that Michigan law applies, but then you'd still have the question. Forget PCI. We're not talking about PCI. Consumers enters into a deal with Dynasteel. They say Michigan law applies. So why would that not then include the application of the Builder's Trust Fund Act, at least with respect to those parties? I'm not arguing with you on that issue at all. It would. Between Dynasteel and consumers, I don't disagree with you. Even though the money is being arguably misapplied outside the state of Michigan, right? Because they agreed the act applies. And because the money was coming from consumers to Dynasteel, and that's where the issue arises. I'm not arguing that with you. Now, what Mr. Jane argues today, although only very briefly, and what I can only find one sentence in the initial brief of PCI, is that PCI is a beneficiary of Dynasteel. That's not developed any place. So I can understand why you haven't really briefed that. So what's your response to the fact that they are a beneficiary under the contractual agreement that says the Michigan statute applies to Dynasteel? Let me answer you in two ways. First of all, had the purchase order between Dynasteel and PCI incorporated the contract between Dynasteel and consumers, they would have a much better argument. That's not uncommon in the industry, and it's not done here. If you look at the purchase order, it does not incorporate the consumer's contract with Dynasteel. Why do you have to have a separate contract that would make their case stronger in connection with whatever the effect is of their beneficiary status? So it seems to me you've got to address yourself to, are they a beneficiary under the statute? And if so, then did they essentially contract that away by virtue of the choice of law provision in the Dynasteel PCI contract? I would say they are not a beneficiary under the statute. Why not? And I would refer back to Judge Edmonds again. She says, look, the act is perfectly general. The whole purpose of the act is don't screw subcontractors. So why are they not a beneficiary under the act? And from that point of view, Your Honor, you could take that act and you could go to Timbuktu, as I said in my brief, or Japan, and you could say, we want to take advantage of the Michigan Builders Trust Fund Act because there's nothing in the act that talks about location. Clearly, it can't be that broad. So your argument then has to be that under their beneficiary theory, there still has to be sufficient context between the beneficiary and the state. Is that how you respond to that? Yes, and again, I just keep falling back on Accutech on that because that's exactly the issue there. One other question I have. That deals with the effect of this payment agreement. Dynasteel and PCI enter into this purchase agreement to supply this insulation. Something goes south, so they enter into this payment agreement that basically says, you'll pay us, but we'll apply it to the oldest invoice first. It just seems, something seems wrong, but I'm having trouble putting my fingers on it, why they can agree that the monies that came from consumers gets applied to the other projects first, leaving the, which is why there's a deficiency on this particular contract, and then say, oh, by the way, you still owe us more money under the Builders Trust Fund Act. Gotcha. It's sort of the gotcha principle. Those are your words, not mine. I agree. So what's wrong with that? So if you take the position that they understood all along, that they were going to argue that the Builders Trust Fund Act applies, then they clearly let us down the primrose path, because had we understood that- You're big boys. You're not going to get anywhere with that one. Well, Judge- Aside from your primrose path argument, what's your basic claim that says entering into the purchase agreement doesn't bail you out? The primrose path argument, I don't think is quite so frivolous. If you were advising Dynasteel at the beginning of this project as to whether or not the Michigan Builders Trust Fund Act could possibly apply, I think any lawyer would have said, no, don't worry about it. You've got a provision in your contract that says tenancy law applies. You have an acute case that protects you as well. Don't worry about it. So I don't think it's quite such a frivolous position. I think, though, that there's a second answer to you, and the second answer is there's essentially a waiver here, because they said you pay us, we'll apply it to the oldest invoice first. If we would have had a clue that we were going to be governed by the Builders Trust Fund Act, we would have never signed that agreement. Well, is it safe to say, the way this really works in the real world, that they agreed with you to use the money from consumers in a way other than what the Builders Trust Fund Act would otherwise require? I would say to you that they agreed to use the proceeds, not only of consumers, but of any jobs that we had, to pay these other jobs. Some of that money was clearly consumers' money. All right. Let me ask another way, because I just want to make sure I get this straight. The money that consumers pays is in connection with the Carnes Project. Now, that money then got applied to other projects. Yes. Not what PCI did in connection with the Carnes Project. So have they not essentially waived their Builders Trust Fund Act claim, even assuming that it applies, by entering into a payment agreement that envisions that the monies would not be held in trust and used only to pay the subs in the Carnes Project? I agree with you, Your Honor. We also made that argument in the lower courts. Well, I had a question mark at the end of that. So you got it. I believe that there is a waiver, that they waived the right to enforce the Builders Trust Fund by asking that any money paid. By not concessing that Carnes money be used for other purposes. Carnes in any, without regard to the source of the funds. To be perfectly clear. I'm sorry. The district court make a finding on that issue. The district court did not address the waiver issue. Well, he didn't reach it because he didn't decide it on the merits. Yes. Because, yeah. And is your position that they received from the consumers money at least as much as they were entitled to receive under the consumer's contract? To be perfectly precise, money being money, you know, it all goes into the bucket. So from the time that they completed their work on, from the time the PCI completed its work on the Carnes installation until we stopped making payments, we received, I'm going to say roughly several million dollars out of the consumer's job. And paid them over two million dollars, which is more than they would have been entitled to for the consumer's job. So to answer Judge White's question more precisely, had they used the money that came from consumers on the Carnes job to pay PCI for the Carnes work, it would have fully paid that off. Yes. The only reason it didn't is you reached a mutual agreement to use the money to pay off all their invoices on other projects that is not envisioned by the Builders Trust Fund Act first. Yes. I got that? Yes. Okay. That's what I needed. Thank you. Thank you very much. Thank you. So how do you reach an agreement with them to do something other than what the Builders Trust Fund Act applies contractually and then say, oh by the way, Builders Trust Fund Act says you screwed us? First of all, when we entered into the payment agreement, we had no idea that Dynasteel had been paid for all of our work and had received payment of all of those funds. This change order that's subject here. So what does it mean? The payment agreement doesn't specify where the funds are coming from. Okay, first of all. Second of all, the payment agreement says that there's a no waiver clause in there and that PCI is expressly reserving all the rights and remedies and claims that they have under the contract statutory case law. Third, the evidence in the record, and this wasn't part of the district court's decision, but we briefed it on summary judgment. We submit that the evidence in the record shows that during the period that Dynasteel paid roughly $2.1 million to performance contracting under the payment agreement, which is between November 17, 2009, November 16, 2009, and June 10, 2010, Dynasteel only received approximately $765,000 from consumers. The project contract amount was $1.8 million. We contend that we only received one payment earmarked from CARN, which was $300,000. So there's still a deficiency, even assuming that... Let me ask you a question another way. If the payment agreement had said the payment, the first money that comes in from Dynasteel goes to the CARN's project, in other words, the inverse of what the agreement apparently says, would this PCI CARN's contract have been fully paid off? No. He says yes, you say no. It's a dispute in the record and the court didn't reach it below. Our contention is that... But you claim it doesn't matter anyway because of the anti-waiver clause. Anti-waiver clause and the fact that the defendants themselves testified that they took all of the funds that they got on any project and dumped them into one account and co-mingled them. The defendants are never going to be able to establish that they paid the $2.1 million came from consumers. What we did is we went through the payment records and there's an affidavit from Constance Gatewood Ward from consumers. It's a record entry 33-12, which lays out all the payments that consumers made to Dynasteel. We also received the bank records from Dynasteel that PCI's in-house accountant analyzed and there was an affidavit submitted attached to one of our briefs where he went through all the money that came into the fifth-third account that Dynasteel had and based on those documents shows that during that time only $760,000 came from consumers. The majority of the money that Dynasteel got during that time was from a $4 million capital infusion from HIG Capital and Jim Russell pursuant to a recapitalization agreement. The act is violated at the moment the trustee receives trust funds and doesn't hold those funds in trust. And here we had specific invoices that Dynasteel sent that included payment for PCI's work. And those funds were specifically paid. Alright, thank you. Case will be submitted.